UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL PATRICK BRAZIL,<br><br>Defendant. | No. 1:18-cr-00157-NONE<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE<br><br>(Doc. No. 18) |

Pending before the court is defendant Michael Patrick Brazil's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The motion is largely based on defendant's medical condition and the risks allegedly posed to him by the ongoing coronavirus ("COVID-19") outbreak. (Doc. No. 18.)[1] For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On September 25, 2006, defendant was sentenced to 87 months in prison after entering a plea of guilty in this court to receipt or distribution of material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2), with a 132 month term of supervised release to

---

[1] Unless otherwise indicated, all docket cites refer to case number 1:18-cr-00157.

follow. (Case No. 1:06-cr-00061, Doc. No. 26.) One of the conditions of defendant's release was that he was not allowed to view, possess, use, or frequent places "with any sexually explicit material in any form that depicts children under the age of 18." (*Id.* at 4.) After serving the term of imprisonment imposed in 2006, defendant was released on June 8, 2012 and his term of supervised release commenced. (Doc. No. 11 (Presentence Report) at 4.) On April 5, 2018, during a session with his treatment provider, defendant admitted that he had possessed child pornography. (*Id.*) After his supervising probation officer seized various computers and hard drives from defendants' residence, a forensic search revealed that defendant was in possession of 521 pictures and four videos containing child pornography. (*Id.* 4–5.) As a result, defendant was charged in this case with possession of a matter that contains a visual depiction of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B). (Doc. No. 1.) On October 22, 2018, defendant entered a plea of guilty to that new charge. (Doc. Nos. 8, 9.) At that time, defendant also admitted to violating the conditions of his supervised release in his earlier, original case. (Case No. 1:06-cr-00061, Doc. Nos. 38, 43.) As to the new count of conviction, it was determined under the U.S. Sentencing Guidelines that defendant's adjusted offense level was 28 and his criminal history category was III, but because of the mandatory minimum 10 year sentence applicable to the charge the advisory guideline range called for a 120 month sentence. (Doc. No. 11 (Presentence Report) at 3, 14.) On January 14, 2019, the court sentenced defendant to the 10-year mandatory minimum term of imprisonment in the new case consecutive to the statutory maximum term of 24 months imprisonment on the supervised release violation, for a total term of imprisonment of 144 months. (Doc. Nos. 13, 14; Case No. 1:06-cr-00061, Doc. Nos. 38, 45, 46.)

Defendant is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP") Lompoc Federal Correctional Institute in Lompoc, California ("FCI Lompoc"). (Doc. No. 18 at 8.) On June 19, 2020, proceeding with appointed counsel, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 18.) On July 6, 2020, the government filed its opposition to the motion, and on July 9, 2020, defendant filed his reply thereto. (Doc. Nos. 22, 23.)

**LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[2] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)   extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

---

[2] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

3

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[3]

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[4]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing

---

[3] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[4] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, __ F. Supp.3d __, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be

"consistent with" the sentencing factors set forth in §3553(a)).

### A. Administrative Exhaustion

Defendant submitted an administrative request to the Warden at FCI Lompoc seeking his compassionate release on or about April 3, 2020. (Doc. Nos. 18 at 11; 22 at 8.) Defendant's request was denied on April 14, 2020. (Doc. No. 16 at 2.) Because his request was denied within 30 days, it would appear that defendant was required to appeal his denial to the BOP's Regional Director pursuant to 28 C.F.R. § 542.15(a). *See supra* note 1. Nonetheless, the government has conceded that administrative exhaustion has been satisfied here. (Doc. No. 22 at 8.) Because failure to comply with an exhaustion requirement is normally viewed as an affirmative defense, the court will therefore address the merits of the pending motion below.

### B. Extraordinary and Compelling Reasons

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

/////

/////

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations. *See, e.g.*, *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331, at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B). In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788, at *1 n.1 (N.D. Cal. Apr. 10, 2020). Nonetheless, defendant does not satisfy the third factor because he has not served at least ten years or 75 percent of the sentencing imposed on him in October of 2018.

Here, defendant Brazil argues that extraordinary and compelling reasons warranting his compassionate release exist due to his medical conditions. (Doc. No. 24 (Defendant's Sealed

Motion for Compassionate Release) at 14.)  To qualify for compassionate release on that basis in this case, defendant must demonstrate that he is "suffering from a serious physical . . . condition . . . that substantially diminishes [his] ability . . . to provide self-care" in FCI Lompoc and "from which he . . . is not expected to recover."  *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).  Defendant is currently 65 years old.  (*See* Doc. No. 11 (Presentence Report) at 2.)  At the time of sentencing, it was noted that he had suffered from diabetes since 1983, high blood pressure, high cholesterol, and various other ailments, and was also receiving treatment for cancer of the ear.  (*Id.* at 9–10.)  According to defendant's recent BOP medical records, generated in May 2020, defendant currently now suffers from Type 2 diabetes, stage 3 chronic kidney disease, essential hypertension, chronic ischemic heart disease, hemorrhoids, an enlarged prostate with a lower urinary tract infection, acute respiratory distress syndrome, and dizziness.  (Doc. No. 21-1 at 2–3 (sealed).)  Additionally, it appears that defendant is actively being screened for a malignant neoplasm in his rectum, which the court understands is a form of rectal cancer.  (*Id.*)

        Defendant Brazil is clearly at higher risk from becoming severely ill were he to contract COVID-19 based on several of his medical conditions.  First, defendant is at risk due to his Type 2 diabetes, stage 3 kidney disease, and potentially his chronic ischemic heart disease which could qualify as a "serious heart disease."  *See Coronavirus Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Oct. 7, 2020).  The court notes that if defendant indeed also suffers from rectal cancer, he would most certainly be at higher risk of severe illness from COVID-19 based on that condition as well.  *Id.*  Second, defendant "might be at increased risk" based on his hypertension and potentially high blood pressure.[5]  *Id.*  Finally, defendant's age may also place him at higher risk for suffering a severe illness were he to contract COVID-19.  *Id.*

/////

---

[5]  Although BOP medical records confirm that defendant currently suffers from high blood pressure, the court notes that the presentence report did report this as being among his medical conditions at the time of his sentencing in October of 2018.

The court does note that defendant tested positive for COVID-19 on about April 11, 2020. (Doc. No. 21 at 2 (sealed).) However, it appears that defendant did not display any symptoms of the virus and was listed as an "asymptomatic person in quarantine" according to his BOP medical records. (Doc. No. 21-1 at 6 (sealed).) Nonetheless, defendant argues that the possibility of reinfection weighs in favor of the granting of his compassionate release. (Doc. No. 18 at 16–18.) In this regard, many courts have "err[ed] on the side of caution to avoid potentially lethal consequences" because "the science is unclear on whether reinfection is possible." *United States v. Yellin*, No. 3:15-cr-3181-BTM-1, 2020 WL 3488738, at *13 (S.D. Cal. June 26, 2020) (finding extraordinary and compelling reasons exist where a COVID-positive inmate at FCI Terminal Island, who did not develop severe symptoms, suffered from a combination of medical conditions that placed him at risk of serious complications from COVID); *see also United States v. Hanson*, No. 6:13-cr-00378-AA-1, 2020 WL 3605845, at *4 (D. Or. July 2, 2020) ("[T]here is no current scientific evidence to indicate that a 'recovered' COVID-19 patient is immune from reinfection, as several courts have recently acknowledged. . . . [T]he Court remains concerned about FCI Terminal Island's ability to provide adequate care in light of defendant's complex medical needs. The Court is not convinced that FCI Terminal Island has been successfully mitigating the risk of reinfection, given the high numbers of infected inmates and Defendant's own contraction of the virus."). Other courts have taken the position that uncertainty surrounding the danger of reinfection "cuts against compassionate release," in part because it is the defendant's burden to establish that "extraordinary and compelling reasons" justifying compassionate release exist. *See United States v. Molley*, No. CR15-0254-JCC, 2020 WL 3498482, at *3 (W.D. Wash. June 29, 2020).

Out of an abundance of caution, the court in this case concludes that because of his Type 2 diabetes, stage 3 chronic kidney disease, and hypertension (and possibly a serious heart condition and rectal cancer), combined with the risk of reinfection from COVID-19, defendant Brazil is "suffering from a serious physical . . . condition . . . from which he . . . is not expected to recover." *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). Even so, the remaining question then is

/////

whether his medical conditions "substantially diminish[] [his] ability . . . to provide self-care" at FCI Lompoc. *See id.*

The court concludes that defendant has not carried his burden in this regard. Defendant does not argue how he is hindered in providing for his own care at FCI Lompoc, other than the general argument that FCI Lompoc did not adequately prepare for the COVID-19 outbreak at that prison. (Doc. No. 18 at 20–21.) It is true that FCI Lompoc suffered from a significant COVID-19 outbreak, with it being reported by the BOP that 746 inmates and 16 staff at that prison tested positive for the virus but recovered, while two inmates died at its hands. *See COVID-19*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Oct. 7, 2020).[6] At the moment, however, the BOP is currently reporting zero inmates and only three staff who are positive with active cases of COVID-19.[7] Because it appears that current active cases among prisoners at FCI Lompoc have been reduced to zero, adding the risk of COVID-19 to the equation thus does not at this time tip the scales in favor of defendant's compassionate release. More to the point, defendant does not point to any concrete evidence demonstrating that he is presently "substantially diminishe[d]" in providing "self-care." *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). Nothing in the record before the court establishes that defendant Brazil is actually struggling to take care of himself while in prison. Indeed, about a month after defendant was reported to have tested positive for COVID-19, BOP medical records stated that defendant appeared "well, alert and orientated." (Doc. No. 21-2 at 3 (sealed).) As a result, the court is unable to find that defendant is unable to provide himself with adequate care while incarcerated at FCI Lompoc. Moreover, defendant appears to be receiving proper and regular care from the prison medical staff for his chronic conditions. (*Id.* at 2–5 (sealed).) While there is still an unknown degree of risk to defendant posed by the possibility that he could be reinfected with COVID-19, that speculative possibility provides no basis upon which the court could conclude that defendant is "substantially

---

[6] FCI Lompoc has a population of 971 inmates. *FCI Lompoc*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/lof/ (last visited Oct. 7, 2020).

[7] While the undersigned does not necessarily accept these reported numbers at face value in light of current CDC guidelines with respect to both testing and the manner of counting "active cases," there is also no evidence before the court challenging those reported numbers in this case.

diminishe[d]" in his ability to "provide self-care" at FCI Lompoc. *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). Thus, defendant Brazil has failed to carry his burden in this regard. *See Greenhut*, 2020 WL 509385, at *1 ("The defendant bears the initial burden to put forward evidence that establishes an entitlement to a sentence reduction.").

Therefore, in this case, the court does not find extraordinary and compelling reasons justifying compassionate release pursuant to § 3582(c)(1)(A).

**C.     Consistency With the § 3553(a) Factors**

Finally, even if defendant Brazil's motion were supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not persuaded that the requested reduction in sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[8] *See Parker*, 2020 WL 2572525, at *11.

After serving an 87-month prison sentence for possessing child pornography, and while on supervised release for that criminal conduct, defendant admitted to once again possessing child pornography and a subsequent search of his personal computers and hard drives revealed he possessed over 500 images and four videos containing explicit material involving minors. (Doc. No. 11 (Presentence Report) at 4–5.) Defendant's admissions in this regard were very troubling. (*See id.* at 4.) The nature of defendant's earlier conviction in state court is yet further cause for serious concern regarding the safety of the community were the defendant to be released. (*Id.* at 7.) Consideration of defendant's history and characteristics do not weigh in favor of granting his release.

---

[8] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

Relatedly, compassionate release is only warranted where "[t]he defendant is not a danger to the safety of any other person or to the community[.]" U.S.S.G. § 1B1.13(2). Defendant argues that, generally, convictions for child pornography do not stand in the way of the granting of compassionate release. (Doc. No. 23 at 2–3.) The government disagrees, or at the very least, argues that this particular defendant's history of possessing child pornography stands in his way of being released. (Doc. No. 22 at 19–22.) As the government explains, defendant is unable to refrain from possessing child pornography while outside of prison, shown by the fact that defendant possessed such materials after serving a lengthy prison sentence for essentially the same conduct. (*See id.* at 20–21.) Some courts have concluded that defendants convicted of possessing child pornography face an uphill battle in seeking compassionate release because, in part, the relative ease in reoffending in today's society with the prevalence of internet-based devices allowing individuals to view such illicit materials. *See, e.g.*, *United States v. Mitchell*, 2:12-cr-0401 KJM, 2020 WL 2770070, at *3 (E.D. Cal. May 28, 2020) (collecting cases); *cf. United States v. Fischman*, No. 16-CR-00246-HSG-1, 2020 WL 2097615, at *3 (N.D. Cal. May 1, 2020) (granting a motion for the compassionate release of a defendant convicted of possession of child pornography where the defendant had served majority of his sentence and taken steps towards rehabilitation while in prison). Defendant's point, that a conviction for possessing child pornography should not be an outright bar to compassionate release, is well-taken. Nonetheless, none of the cases cited by defendant are analogous to the situation here, where defendant Brazil has repeatedly engaged in criminal behavior with respect to minors and has failed to establish his rehabilitation with respect to such behavior. In short, it appears defendant Brazil remains a danger to the community.

Finally, in this case defendant has served about 28 ½ months of his 144-month prison sentence. (*See* Doc. No. 22-1 at 5.) Even with a maximum award of time credits, defendant would not be credited with more than approximately 32 months of that sentence already served. (*Id.*) As noted above, defendant was sentenced to a 10-year mandatory minimum term of imprisonment on his second federal criminal conviction, and a consecutive term of imprisonment of 24 months for violating his supervised release in his first criminal case. (Doc. Nos. 13, 14;

Case No. 1:06-cr-00061, Doc. Nos. 38, 45, 46.)  A 32-month sentence, which would constitute a 112-month sentence reduction, would not adequately reflect the seriousness of defendant's offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct.  *See* § 3553(a); *see also United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993, at *5–6 (N.D. Cal. May 26, 2020) ("The length of the sentence remaining is an additional factor to consider in any compassionate release analysis, with a longer remaining sentence weighing against granting any such motion." (citation omitted)).

**CONCLUSION**

For the reasons explained above, the court concludes that defendant has not demonstrated that "extraordinary and compelling reasons" exist warranting his compassionate release from prison.  Moreover, the court finds that the granting of release at this time is not consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a).  Accordingly, defendant Brazil's motion for compassionate release (Doc. No. 18) is denied.

IT IS SO ORDERED.

Dated:   **October 12, 2020**                              _Dale A. Drozd_
                                                             UNITED STATES DISTRICT JUDGE